**United States District Court**
**for the District of Maryland**
**at Greenbelt**

_____

| | | |
|---|---|---|
| Joanne Stewart | : | |
| 3297 Westdale Court | : | |
| Waldorf, MD 20601 | : | |
| | | Case No. 8:20-cv-2967 |
| and | : | |
| | : | |
| Erica Smith | : | |
| 12380 Mt. Clare Place #13108 | : | |
| Waldorf, MD 20601, | : | |
| Plaintiffs | : | |
| | | |
| v. | : | |
| | | |
| Grady Management, Inc. | : | |
| c/o Jean Paul Savary | : | |
| The Montgomery Center | : | |
| 8630 Fenton Street, Suite 625 | : | |
| Silver Spring, MD 20910, | : | |
| Defendant | : | |

_____

## <u>COMPLAINT</u>

Plaintiffs, Joanne Stewart and Erica Smith, for their cause of action against Defendant, Grady

Management, Inc., alleges the following:

### <u>PARTIES</u>

1. Plaintiff Joanne Stewart is a resident of Charles County, Maryland, who at all times relevant

   resided at 2502 Lake Drive, Apartment 534, Waldorf, Maryland 20601.

2. Plaintiff Erica Smith is a resident of Charles County, Maryland, who at all times relevant resided

   at 12380 Mt. Clare Place, Apartment 13108, Waldorf, Maryland 20601.

3. Defendant is a Maryland corporation, with a principal place of business and resident agent

   located at 8630 Fenton Street, Suite 625, Silver Spring, Maryland 20910.

**JURISDICTION AND VENUE**

4.  Plaintiffs bring their Complaint pursuant to 28 U.S.C. §1331, as this action arises under Title VIII, a Civil Rights Statute enacted by the United States.

5.  Plaintiffs also bring their Complaint pursuant to 28 U.S.C. §1367, as the District Court has supplemental jurisdiction over claims brought under the provisions of the Civil Rights statutes enacted by the United States.

6.  The District of Maryland at Greenbelt is the appropriate venue as the subject properties and all Plaintiffs and the Defendant are residents of Maryland Counties which fall under the geographical territory of that District Court.

**FACTS**

7.  The Center Pointe Apartment Community is an one hundred forty-four unit community managed by Defendant, Grady Management, Inc.

8.  The Adam's Crossing Apartment Community is a three hundred twelve unit community managed by Defendant, Grady Management, Inc.

9.  Plaintiff Joanne Stewart ("Plaintiff Stewart") is an African-American woman.

10. In 2017, Plaintiff Stewart was forty years old.

11. In 2018, Plaintiff Stewart was forty-one years old.

12. At all times relevant, Plaintiff Stewart was an unmarried mother to minor children.

13. At all times relevant, Plaintiff Stewart suffered from severe asthma and Lupus.

14. At all times relevant, Plaintiff Stewart had two minor, female, African-American children that resided with her.

15. At all times relevant, Plaintiff Stewart resided at 2502 Lake Drive, Apartment 534, Waldorf, Maryland 20601.

16. The above-referenced apartment was located in the Center Pointe Apartment Community.

17. On July 13, 2017, the air conditioning in Plaintiff Stewart's apartment stopped working.

18. After an attempt to fix the air conditioning on that same date was unsuccessful, Defendant provided Plaintiff Stewart with two portable air conditioning units until a necessary part for the repair of her air conditioning unit arrived.

19. From July 13, 2017 to July 16, 2017, Plaintiff Stewart and her minor children had to sleep on the floor of her friends and family homes because they were unable to stay at their residence.

20. On July 17, 2017, Plaintiff Stewart requested that Defendant pay for a hotel room for herself and her children as her apartment was too hot to reside in.

21. Defendant denied this request.

22. Plaintiff Stewart paid $120.00 to reside in a hotel on July 17, 2017.

23. Plaintiff Stewart also paid $75.00 for food for herself and her children since she was displaced from her kitchen.

24. On July 18, 2017, the air conditioner in Plaintiff Stewart's apartment was still not working.

25. With both the portable air conditioning units still running in Plaintiff Stewart's apartment, the thermostat still read eighty-five degrees.

26. Plaintiff Stewart spent all of July 18, 2017 in her vehicle and in stores in order to stay cool.

27. Plaintiff Stewart requested a status update from Defendant on the needed repairs to her air conditioning unit on July 18, 2017.

28. Defendant told Plaintiff Stewart that there was no one available to speak to her.

29. On July 18, 2017, Plaintiff Stewart again requested that Defendant pay for her stay at a hotel since the heat in her apartment made it uninhabitable.

30. This request was again denied by the Defendant.

31. Plaintiff Stewart paid $120.00 to reside at a hotel on July 18, 2017.

32. Plaintiff Stewart also paid $75.00 for food for herself and her children since she was displaced from her kitchen.

33. On July 19, 2017, the air conditioning in Plaintiff Stewart's apartment was still not working.

34. A heat advisory for Waldorf, Maryland was in effect on this date.

35. With both the portable air conditioning units still running in Plaintiff Stewart's apartment, the thermostat still read eighty degrees.

36. Plaintiff Stewart requested that Defendant provide hotel accommodations for herself and her children.

37. Plaintiff Stewart also requested a status update as to when she could expect her air conditioning unit to be fixed.

38. On July 19, 2017, Defendant provided hotel accommodations for Plaintiff Stewart and her children, however, no information was provided as to when she could expect her air conditioning unit to be repaired.

39. On the morning of July 20, 2017, Plaintiff Stewart's air conditioning unit was not working.

40. Defendant provided hotel accommodations for Plaintiff Stewart and her children and assured her that a HVAC contractor was replacing her air conditioner unit so that she and her children would be able to return to her residence the next day.

41. Plaintiff Stewart was able to return to her residence later in the evening on July 20, 2017.

42. Plaintiff Stewart was displaced from her residence from July 13, 2017 to July 20, 2017.

43. As a result of the two portable air conditioners placed in Plaintiff Stewart's apartment by the Defendant, Plaintiff Stewart incurred an extremely high electric utility bill.

44. In July 2018, Plaintiff Stewart's home was infested with bed bugs.

45. Both of Plaintiff Stewart's minor children suffered multiple painful bites all over their bodies.

46. Plaintiff Stewart also suffered from painful bites all over her body.

47. Although Defendant was aware that there was an apartment in Plaintiff Stewart's building that was infected with bed bugs, at no time did Defendant warn Plaintiff Stewart that her apartment was in danger of infestation.

48. Although Defendant was aware that there was an apartment in Plaintiff Stewart's building that was infected with bed bugs, at no time did Defendant provide any preventive services for Plaintiff Stewart.

49. When Plaintiff Stewart called Defendant to report that her apartment was infested with bed bugs, Defendant's agents told her that there was no such infestation anywhere in her building.

50. At no time after Plaintiff Stewart informed Defendant of the bed bug infestation did Defendant fumigate or provide any pest control services to Plaintiff Stewart.

51. Plaintiff Stewart and her minor children lost many possessions as a result of this infestation, including bedding, linen, and clothing.

52. The bed bug infestation made Plaintiff Stewart's apartment uninhabitable, and she had to vacate her residence in July 2018.

53. Plaintiff Stewart incurred significant out-of-pocket expenses in July, August, and September 2018 in order to provide alternative housing for herself and her minor children.

54. Plaintiff Stewart believes her out-of-pocket costs from July 2018 to September 2018 to be $10,000.00.

55. On August 21, 2018, Plaintiff Stewart contacted Defendant and requested that she be reimbursed for the out-of-pocket expenses incurred related to this incident.

56. The Defendant denied this request.

57. As a direct result of Defendant's actions, Plaintiff Stewart and her children were displaced from their home on multiple occasions, her medical conditions were exacerbated, and she and her minor children incurred physical injury.

58. Plaintiff Stewart also suffered embarrassment and humiliation, as well as monetary losses.

59. Plaintiff Erica Smith ("Plaintiff Smith") is an African-American woman.

60. In 2019, Plaintiff Smith was thirty-four years old.

61. In 2020, Plaintiff Smith was thirty-five years old.

62. At all times relevant, Plaintiff Smith was a single mother.

63. At all times relevant, Plaintiff Smith was a recipient of housing subsided through Section 8 of the Housing Act of 1937 as amended.

64. At all times relevant, Plaintiff Smith had two minor, African-American children, one male and one female, that resided with her.

65. At all times relevant, Plaintiff Smith's son suffered from severe asthma.

66. At all times relevant, Plaintiff Smith resided at 12380 Mt. Clare Place, Apartment 13108, Waldorf, Maryland 20601.

67. The above-referenced apartment was located in the Adam's Crossing Apartment Community.

68. On June 17, 2019, Plaintiff Smith's apartment flooded when the plumbing system of the apartment unit above her malfunctioned.

69. From June 20, 2019 to July 3, 2019, Plaintiff Smith and her children were displaced from her apartment.

70. Plaintiff Smith paid $1667.72 for hotel accommodations for herself and her children during this time.

71. Plaintiff Smith also paid Reasonable Cleaning, LLC $300.00 to deep clean and sanitize her residence at her own expense.

72. Defendant utilized large electric fans to dry out Plaintiff Smith's apartment.

73. As a result of the use of these fans, Plaintiff Smith incurred extremely high electric utility bills for the months of June and July 2019.

74. On August 19, 2019, Plaintiff Smith contacted Defendant to request that she be reimbursed for her out-of-pocket expenses, the electric utility bill, and the inconvenience related to her displacement.

75. Defendant denied Plaintiff Smith's request.

76. At no time did Defendant ever replace the flooring or carpeting in Plaintiff Smith's home.

77. In July 2020, Plaintiff Smith noticed that black mold was growing in some portions of her home.

78. At the same time, Plaintiff Smith's son began to suffer from an increase is asthma attacks and labored breathing.

79. Plaintiff Smith and her daughter also began to develop symptoms similar to those caused by indoor allergies.

80. Plaintiff Smith requested that she be moved to a different apartment unit.

81. Maintenance personnel hired by Defendant cleaned the black spots with a cleanser unknown to Plaintiff Smith and told her that the spots were not mold.

82. The black spots were also painted by the same maintenance personnel.

83. The black spots have since returned to Plaintiff Smith's apartment.

84. To date, Plaintiff Smith has never been reimbursed for the charges she incurred when her apartment flooded.

85. As a direct result of Defendant's actions, Plaintiff Smith and her children were displaced from their home for an extended period of time, her son's medical condition was exacerbated, and Plaintiff Smith and her children continue to be exposed to an unhealthy living environment.

86. Plaintiff Smith has observed black mold growing on the sides of several buildings in the Adam's Crossing Community.

87. Plaintiff Smith also suffered embarrassment and humiliation, as well as monetary losses.

88. Defendant's acts and omissions had no legitimate purpose, nor did there exist a business necessity that made their acts and omissions necessary.

**COUNT I**
**TITLE VIII, 42 U.S.C. §3604(b)**
**DISCRIMINATION IN CONDITIONS OF**
**RENTAL OF A DWELLING BASED ON RACE**

89. Plaintiffs incorporate by reference paragraphs 1-88 as if fully set forth under this Count and further allege:

90. Plaintiffs are African-American, a protected class under 42 U.S.C. §3604(b).

91. While living in residences managed by the Defendant, Plaintiffs were made to live in homes unfit for human habitation and in conditions that presented a serious threat to their health because of their race.

7

92. Plaintiff Stewart was subject to extreme temperatures during a heat wave.

93. Plaintiff Stewart was also subjected to a pest infestation.

94. Both of Plaintiff Stewart's minor children suffered multiple painful bites all over their bodies during the pest infestation.

95. Plaintiff Stewart also suffered from painful bites all over her body.

96. At all times relevant, Plaintiff Stewart suffered from lupus.

97. Plaintiff Smith was subject to flooding and the growth of black mold.

98. Plaintiff Smith's son began to suffer from an increase in asthma attacks and labored breathing.

99. Plaintiff Smith and her daughter also began to develop symptoms similar to those caused by indoor allergies.

100. Comfortable temperature, pest control, and breathability are some of the elements that compose the conditions of a dwelling.

101. Plaintiffs timely reported the unhealthy conditions of their residences to the Defendant.

102. Defendant failed to take prompt and appropriate action to prevent and correct these conditions.

103. The actions and omissions of the Defendant are part of a pattern of racial discrimination that Plaintiffs experienced while renting dwellings managed by the Defendant.

104. The actions and omissions of the Defendant were intentional and malicious.

105. As a direct result of the actions and omissions of the Defendant, Plaintiffs suffered monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiffs respectfully request Judgment in their favor against Defendant for $100,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## COUNT II
## TITLE VIII, 42 U.S.C. §3604(b)
## DISCRIMINATION IN CONDITIONS OF
## RENTAL OF A DWELLING BASED ON SEX

106.     Plaintiffs incorporate by reference paragraphs 1-105 as if fully set forth under this Count and further allege:

107.     Plaintiffs are female, a protected class under 42 U.S.C. §3604(b).

108.     While living in residences managed by the Defendant, Plaintiffs were made to live in homes unfit for human habitation and in conditions that presented a serious threat to their health because of their sex.

109.     Plaintiff Stewart was subject to extreme temperatures during a heat wave.

110.     Plaintiff Stewart was also subjected to a pest infestation.

111.     Both of Plaintiff Stewart's minor children suffered multiple painful bites all over their bodies during the pest infestation.

112.     Plaintiff Stewart also suffered from painful bites all over her body.

113.     At all times relevant, Plaintiff Stewart suffered from lupus.

114.     Plaintiff Smith was subject to flooding and the growth of black mold.

115.     Plaintiff Smith's son began to suffer from an increase in asthma attacks and labored breathing.

116.     Plaintiff Smith and her daughter also began to develop symptoms similar to those caused by indoor allergies.

117.     Comfortable temperature, pest control, and breathability are some of the elements that compose the conditions of a dwelling.

118.     Plaintiffs timely reported the unhealthy conditions of their residences to the Defendant.

119.     Defendant failed to take prompt and appropriate action to prevent and correct these conditions.

120.    The actions and omissions of the Defendant are part of a pattern of sex-based

discrimination that Plaintiffs experienced while renting dwellings managed by the Defendant.

121.    The actions and omissions of the Defendant were intentional and malicious.

122.    As a direct result of the actions and omissions of the Defendant, Plaintiffs suffered

monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiffs respectfully request Judgment in their favor against Defendant for

$100,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such

other relief that justice requires.

### COUNT III
### TITLE VIII, 42 U.S.C. §3604(b)
### DISCRIMINATION IN CONDITIONS OF
### RENTAL OF A DWELLING BASED ON FAMILIAL STATUS

123.    Plaintiffs incorporate by reference paragraphs 1-122 as if fully set forth under this Count

and further allege:

124.    Plaintiffs are unmarried mothers of minor children, a status protected under

42 U.S.C. §3604(a).

125.    While living in residences managed by the Defendant, Plaintiffs were made to live in

homes unfit for human habitation and in conditions that presented a serious threat to their health

because of their status as unmarried mothers of minor children.

126.    Plaintiff Stewart was subjected to extreme temperatures during a heat wave.

127.    Plaintiff Stewart was also subjected to a pest infestation.

128.    Both of Plaintiff Stewart's minor children suffered multiple painful bites all over their

bodies during the pest infestation.

129.    Plaintiff Stewart also suffered from painful bites all over her body.

130.    At all times relevant, Plaintiff Stewart suffered from lupus.

131.    Plaintiff Smith was subjected to flooding and the growth of black mold.

132.    Plaintiff Smith's son began to suffer from an increase is asthma attacks and labored

breathing.

133.    Plaintiff Smith and her daughter also began to develop symptoms similar to those caused

by indoor allergies.

134.    Comfortable temperature, pest control, and breathability are some of the elements that

compose the conditions of a dwelling.

135.    Plaintiffs timely reported the unsafe conditions of their residences to the Defendant.

136.    Defendant failed to take prompt and appropriate action to prevent and correct these

conditions.

137.    The actions and omissions of the Defendant are part of a pattern of familial status

discrimination that Plaintiffs experienced while renting dwellings managed by the Defendant.

138.    The actions and omissions of the Defendant were intentional and malicious.

139.    As a direct result of the actions and omissions of the Defendant, Plaintiffs suffered

monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiffs respectfully request Judgment in their favor against Defendant for

$100,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such

other relief that justice requires.

### COUNT IV
### TITLE VIII, 42 U.S.C. §3604(b)
### DISCRIMINATION IN THE IMPACT OF CONDITIONS OF
### RENTAL OF A DWELLING BASED ON FAMILIAL STATUS

140.    Plaintiffs incorporate by reference paragraphs 1-139 as if fully set forth under this Count

and further allege:

141.    Plaintiffs are unmarried mothers of minor children, a status protected under

42 U.S.C. §3604(b).

142.        While living in residences managed by the Defendant, Plaintiffs were made to live in
homes unfit for human habitation and in conditions that presented a serious threat to their health
because of their status as unmarried mothers of minor children.

143.        Plaintiff Stewart was subject to extreme temperatures during a heat wave.

144.        Plaintiff Stewart was subsequently displaced from her residence.

145.        Plaintiff Stewart incurred considerable costs due to this displacement, including  higher
electric utility bills and hotel accommodations.

146.        Plaintiff Stewart incurred these costs with little assistance or reimbursement from
Defendant.

147.        Plaintiff Stewart was also subjected to a pest infestation.

148.        Plaintiff Stewart was again forced to leave her residence and find other accommodations
for herself and her minor children.

149.        Plaintiff Stewart incurred considerable costs due to these displacements.

150.        Plaintiff Stewart received no assistance or reimbursement from Defendant.

151.        Plaintiff Smith was subject to flooding.

152.        Plaintiff Smith was displaced from her residence as a result of this flooding.

153.        Plaintiff Smith incurred considerable costs due to this displacement, including hotel
accommodations, cleaning, sanitation, and higher electric utility bills.

154.        Plaintiff Smith received no assistance or reimbursement from Defendant.

155.        Defendant required the Plaintiffs to bear all the collateral costs necessitated by the repair
of the unhealthy conditions of their residences.

156.        The aforementioned practice of the Defendant has a substantially greater impact on
tenants who are unmarried mothers of minor children.

157.        The actions and omissions of the Defendant were intentional.

158.        As a direct result of the actions and omissions of the Defendant, Plaintiffs suffered
monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiffs respectfully request Judgment in their favor against Defendant for $100,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

<u>**COUNT V**</u>
<u>**BREACH OF IMPLIED COVENANT OF QUIET ENJOYMENT**</u>
<u>**(PLAINTIFF STEWART)**</u>

159.     Plaintiffs incorporate by reference paragraphs 1-158 as if fully set forth under this Count and further allege:

160.     At all times relevant, Plaintiff Stewart resided in an apartment located in the Center Pointe Apartment Community.

161.     In July 2018, Plaintiff Stewart's home was infested with bed bugs.

162.     Both of Plaintiff Stewart's minor children suffered multiple painful bites all over their bodies.

163.     Plaintiff Stewart also suffered from painful bites all over her body.

164.      When Plaintiff Stewart called Defendant to report that her apartment was infested with bed bugs, Defendant's agents told her that there was no such infestation anywhere in her building.

165.     At no time after Plaintiff Stewart informed Defendant of the bed bug infestation did Defendant fumigate or provide any pest control services to Plaintiff Stewart.

166.     Plaintiff Stewart and her minor children lost many possessions as a result of this infestation, including bedding, linen, and clothing.

167.     The failure of Defendant to provide preventive or remedial pest control services substantially interfered with Plaintiff Stewart's use and enjoyment of her residence.

168.     As a direct result of the actions and omissions of the Defendant, Plaintiffs suffered monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff Stewart respectfully requests Judgment in her favor against Defendant for $10,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## COUNT VI
## BREACH OF IMPLIED COVENANT OF QUIET ENJOYMENT
## (PLAINTIFF SMITH)

169.    Plaintiffs incorporate by reference paragraphs 1-168 as if fully set forth under this Count and further allege:

170.    At all times relevant, Plaintiff Smith resided in an apartment located in the Adam's Crossing Apartment Community.

171.    On June 17, 2019, Plaintiff Smith's apartment flooded when the plumbing system of the apartment unit above her malfunctioned.

172.    In July 2020, Plaintiff Smith noticed that black mold was growing in some portions of her home.

173.    At the same time, Plaintiff Smith's son began to suffer from an increase is asthma attacks and labored breathing.

174.    Plaintiff Smith and her daughter also began to develop symptoms similar to those caused by indoor allergies.

175.    Defendant continues to deny that Plaintiff Smith's apartment has black mold.

176.    Defendant also continues to deny that any sanitation, cleaning, or flooring replacement is needed in Plaintiff Smith's apartment.

177.    The failure of the Defendant to provide preventive and remedial cleaning and sanitation services, or in the alternative move Plaintiff Smith to a different apartment, has substantially interfered with Plaintiff Smith's use and enjoyment of her residence.

178.    As a direct result of the actions and omissions of the Defendant, Plaintiff has suffered monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff Smith respectfully requests Judgment in her favor against Defendant for $10,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## COUNT VII
## CONSTRUCTIVE EVICTION
## (PLAINTIFF STEWART)

179.     Plaintiffs incorporate by reference paragraphs 1-178 as if fully set forth under this Count

and further allege:

180.     At all times relevant, Plaintiff Stewart resided in an apartment located in the Center

Pointe Apartment Community.

181.     In July 2018, Plaintiff Stewart's home was infested with bed bugs.

182.     Both of Plaintiff Stewart's minor children suffered multiple painful bites all over their

bodies.

183.     Plaintiff Stewart also suffered from painful bites all over her body.

184.      When Plaintiff Stewart called Defendant to report that her apartment was infested with

bed bugs, Defendant's agents told her that there was no such infestation anywhere in her building.

185.     At no time after Plaintiff Stewart informed Defendant of the bed bug infestation did

Defendant fumigate or provide any pest control services to Plaintiff Stewart.

186.     Plaintiff Stewart and her minor children lost many possessions as a result of this

infestation, including bedding, linen, and clothing.

187.     The bed bug infestation made Plaintiff Stewart's apartment uninhabitable.

188.     Plaintiff Stewart and her children were forced to vacate the residence in July 2018.

189.     Plaintiff Stewart incurred significant out-of-pocket expenses in July, August, and

September 2018 in order to provide alternative housing for herself and her minor children.

190.     The failure of Defendant to provide preventive or remedial pest control services so

materially disturbed Plaintiff Stewart's use and enjoyment of her residence that she was forced to

vacate the premises.

191.     As a direct result of the actions and omissions of the Defendant, Plaintiff suffered

monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff Stewart respectfully requests Judgment in her favor against Defendant for $10,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

**COUNT VIII**
**CONSTRUCTIVE EVICTION**
**(PLAINTIFF SMITH)**

192.     Plaintiffs incorporate by reference paragraphs 1-191 as if fully set forth under this Count and further allege:

193.     At all times relevant, Plaintiff Smith resided in an apartment located in the Adam's Crossing Apartment Community.

194.     On June 17, 2019, Plaintiff Smith's apartment flooded when the plumbing system of the apartment unit above her malfunctioned.

195.     From June 20, 2019 to July 3, 2019, Plaintiff Smith and her children were displaced from her apartment.

196.     Plaintiff Smith paid $1667.72 for hotel accommodations for herself and her children during this time.

197.     Plaintiff Smith also paid Reasonable Cleaning, LLC $300.00 to deep clean and sanitize her residence at her own expense.

198.     Defendant utilized large electric fans to dry out Plaintiff Smith's apartment.

199.     As a result of the use of these fans, Plaintiff Smith incurred extremely high electric utility bills for the months of June and July 2019.

200.     The failure of the Defendant to provide preventive and remedial cleaning and sanitation services so materially disturbed Plaintiff Stewart's use and enjoyment of her residence that she was forced to vacate the premises.

201.     As a direct result of the actions and omissions of the Defendant, Plaintiff suffered monetary losses, physical injury, mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff Smith respectfully requests Judgment in her favor against Defendant for $10,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## PRAYER OF RELIEF

**WHEREFORE**, Plaintiffs respectfully request Judgment in their favor against Defendant for $110,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief as justice requires.

## JURY TRIAL PRAYER

Plaintiffs request Trial by Jury in this matter.

Respectfully Submitted,

/s/ *Andrea D. Smith*

_____

Andrea D. Smith, Esq., Bar ID # 20532
The Law Office of Andrea D. Smith, LLC
9701 Apollo Drive, Suite 100
Largo, MD 20772
301-246-6805
andrea.smith@smithlawllc.org

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing will be served via private process server to:

Grady Management, Inc.
c/o Jean Paul Savary
The Montgomery Center
8630 Fenton Street, Suite 625
Silver Spring, MD 20910

/s/ *Andrea D. Smith*

_____

Andrea D. Smith, Esq.